**BAKER & HOSTETLER LLP**
Amy E. Beverlin, SBN 284745
*abeverlin@bakerlaw.com*
11601 Wilshire Blvd., Suite 1400
Los Angeles, CA 90025-0509
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Sylvia J. Kim, SBN 258363
*sjkim@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111-2806
Telephone: 415.659.2600
Facsimile: 415.659.2601

**BAKER & HOSTETLER LLP**
M. Scott McIntyre, pro hac vice
*smcintyre@bakerlaw.com*
312 Walnut Street, Suite 3200
Cincinnati, OH 45202-4074
Telephone: 513.852.2622
Facsimile: 513.479.9558

Attorneys for Defendants
NOVARTIS PHARMACEUTICALS CORPORATION and
ADVANCED ACCELERATOR APPLICATIONS USA, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JENNIFER L. YESSAIAN,

Plaintiff,

vs.

NOVARTIS PHARMACEUTICALS CORPORATION, a Delaware corporation; ADVANCED ACCELERATOR APPLICATIONS USA, INC.; and DOES 1 through 20, inclusive,

Defendants.

CASE NO. 2:23-cv-00747-KK(JCx)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR OTHERWISE FOR *IN CAMERA* INSPECTION:**

**(1) MEMORANDUM OF POINTS AND AUTHORITIES**

**(2) EVIDENTIARY OBJECTIONS TO DECLARATION OF STEPHEN G. LARSON**

**(3) EVIDENTIARY OBJECTIONS TO DECLARATION OF ROBERT PRATA**

**Date:** June 13, 2024
**Time:** 9:30 a.m.
**Crtrm:** 3
**Judge:** Kenly Kiya Kato

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ii

MEMORANDUM OF POINTS AND AUTHORITIES 1

I. INTRODUCTION 1

II. DEFENDANTS' MOTION IS NOT PROCEDURALLY DEFECTIVE 2

III. PLAINTIFF'S DISABILITY AND MEDICAL CONDITION DISCRIMINATION CLAIMS WERE OBJECTIVELY FRIVOLOUS 5

A. PLAINTIFF'S OWN TESTIMONY BELIED THE NOTION THAT ANY RELEVANT DECISIONMAKERS KNEW SHE HAD LUPUS 5

B. PLAINTIFF LACKED ANY EVIDENCE OF PRETEXT 8

C. PLAINTIFF MADE MATERIALLY FALSE ALLEGATIONS IN HER COMPLAINT 8

D. PLAINTIFF'S PROFFERED DECISIONAL AUTHORITIES AND DECLARATION OF STEPHEN LARSON SHOULD BE DISREGARDED 9

IV. PLAINTIFF'S SEX DISCRIMINATION CLAIM WAS OBJECTIVELY FRIVOLOUS 11

V. PLAINTIFF'S AGE DISCRIMINATION CLAIM WAS OBJECTIVELY FRIVOLOUS 12

VI. PLAINTIFF'S REJECTION OF DEFENDANTS' NOMINAL RULE 68 OFFER OF JUDGMENT SUPPORTS AN AWARD OF ATTORNEYS' FEES 14

VII. CONCLUSION 16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- i -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adtrader, Inc. v. Google LLC*,
2020 WL 6389186 (N.D. Cal. Feb. 24, 2020)....3

*Comm. for Idaho's High Desert, Inc. v. Yost*,
92 F.3d 814 (9th Cir.1996)....4

*Fed. Sav. & Loan Ins. Corp. v. Ferm*,
909 F.2d 372 (9th Cir. 1990)....3

*Gilead Scis., Inc. v. Merck & Co, Inc.*,
2016 WL 4242216 (N.D. Cal. Aug. 11, 2016)....2

*In re Grand Jury Witness*,
695 F.2d 359 (9th Cir. 1982)....3

*GTE Mobilnet of California Ltd. P'ship v. City of Carmel By-the-Sea*,
2022 WL 4486415 (N.D. Cal. Aug. 26, 2022)....2

*Hamilton v. Sheridan Healthcare., Inc.*,
2015 WL 13541033 (S.D. Fla. March 4, 2015)....15

*Lenk v. Monolithic Power Sys., Inc.*,
2022 WL 824233 (N.D. Cal. Mar. 18, 2022)....6

*Lial v. Cnty. Of Stanislaus*,
2011 WL 92012 (E.D. Cal. Jan. 11, 2011)....14

*Portnoy v. Veolia Transp. Servs.*,
2013 WL 4828122 (E.D. Cal. Sept. 5, 2013)....15

*Real v. Cont'l Grp., Inc.*,
116 F.R.D. 211 (N.D. Cal. 1986)....3

*Shah v. Cnty. of Los Angeles*,
2010 WL 11578744 (C.D. Cal. Sept. 20, 2010)....1

*Travelers Prop. Cas. Co. of Am. v. Centex Homes*,
2013 WL 707918 (N.D. Cal. Feb. 26, 2013)....3

*White v. South Park Independent Sch. Dist.*,
693 F.2d 1163 (5th Cir. 1982) .......... 10

**California Cases**

*Cummings v. Benco Building Services*,
11 Cal.App.4th 1383 (1992) .......... 9, 10

*Gonzales v. Metpath, Inc.*,
214 Cal.App.3d 422 (1989) .......... 1, 2

*Morgan v. Regents of University of California*,
88 Cal.App.4th 52 (2000) .......... 7

**Federal Rules**

Fed. R. Civ. P. 54(d)(2)(B)(i) .......... 4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Attorneys' fees may appropriately be awarded in this case, not because Plaintiff ultimately failed to prevail on her claims, but because she lacked evidentiary support for her claims in the first instance. Tellingly, Plaintiff's Opposition does not even proffer her own declaration attesting that her claims were brought in good faith. Instead, her Opposition consists of mischaracterizations and/or omissions of material portions of her Complaint and deposition testimony, citations to distinguishable, non-analogous cases, and an improper attempt to rely on an inadmissible opinion testimony by a non-party with no involvement in this case.

Defendants are entitled to an award of attorneys' fees as the prevailing party because Plaintiff should have known that her suit was objectively baseless either before the complaint was filed or immediately after her own deposition testimony in this case contradicted material allegations in her Complaint. Indeed, "[c]ourts have awarded attorney fees to prevailing defendants where no evidence supports the plaintiff's position or where the defects in the suit are of such magnitude that the plaintiff's ultimate failure is clearly apparent from the beginning or at some significant point in the proceedings after which the plaintiff continues to litigate." *Shah v. Cnty. of Los Angeles*, 2010 WL 11578744, at *3 (C.D. Cal. Sept. 20, 2010) (quoting *Goldrich, Kest & Stern v. City of San Fernando*, 617 F.Supp. 557, 562 (C.D. Cal. 1985)).

Fees are warranted here because Plaintiff lacked evidence to support the most basic element of her claims – that her membership in a protected class had anything at all to do with her termination. Merely belonging to some protected class, in and of itself, is not a sufficient reason to file a lawsuit. It does not shield a plaintiff from the consequences of pursuing a baseless lawsuit without any evidence of wrongdoing. To permit otherwise would confer a "distinct disservice" on "the cause of equal employment opportunity." *Gonzales v. Metpath, Inc.*, 214 Cal.App.3d 422,

428 (1989). As the *Gonzales* court elaborated, the primary driving force behind these frivolous pursuits is painfully clear:

> [Plaintiff] and her counsel are undoubtedly driven by hopes of winning the jury lottery—by dreams of the pot of gold some juries find in the deliberation room and bring forth to bestow upon the lucky few. The effect on equal employment opportunity, however, is devastating, for this groundless action sends a clear message: Employers, beware your minority and female employees. By every business decision you make you subject yourself to the risk one of them will engulf you in protracted litigation which will inflict enormous legal expense, consume the time of your key employees, and distract your entire staff from your business mission.

*Id*.

The "I can't think of any other reason, so it must be discrimination" argument is not an objectively reasonable basis for filing a lawsuit, particularly where, as here, the non-discriminatory reasons offered by the employer are objectively reasonable and well-documented. Thus, as we discuss more fully below, Defendants' Motion should be granted.

## II. DEFENDANTS' MOTION IS NOT PROCEDURALLY DEFECTIVE

Before the Court could consider the reasonableness of any fee amount that Defendants may seek to recover, it would first have to find that Defendants are entitled to an award of attorneys' fees under either FEHA or Section 1927. *See, e.g.*, *GTE Mobilnet of California Ltd. P'ship v. City of Carmel By-the-Sea*, 2022 WL 4486415, at *1 (N.D. Cal. Aug. 26, 2022) ("Because the City is not entitled to recovery of its attorneys' fees, the Court need not consider the reasonableness of the fees requested."); *see also, e.g.*, *Gilead Scis., Inc. v. Merck & Co, Inc.*, 2016 WL 4242216, at *1 (N.D. Cal. Aug. 11, 2016) ("the Court informed the parties that it would first decide Gilead's entitlement to attorneys' fees and if warranted, would allow the parties to submit further briefing on the amount of attorneys' fees"). Therefore, in their opening papers, Defendants sought leave to file billing documentation, supporting fee declarations, and other documentation required by Rule 9 of the Court's Civil Standing Order separately and *only in the event that the*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

*Court finds that Defendants are entitled to fees in the first instance*. Mot. at 15:9-16:2.

Plaintiff's contention that "Defendants simply violated the Standing Order without offering any meaningful rationale as to why they could not comply with its terms" is disingenuous at best. Opp. at 4:18-19. Defendants' opening papers expressly stated that they were seeking leave to file the required documentation "to protect privileged attorney-client communications as well as confidential and proprietary fee information from public disclosure." Mot. at 15:23-26. Indeed, the Ninth Circuit has held that the *very* information that Defendants are required to submit in support of their fees request – namely, "all the tasks on which the attorney worked" (Civil Standing Order at 10:16) – "should fall within the [attorney-client] privilege." *See In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) (documents "reveal[ing] the nature of the services provided" fall within privilege); *Travelers Prop. Cas. Co. of Am. v. Centex Homes*, 2013 WL 707918, at *1 (N.D. Cal. Feb. 26, 2013) ("Under Ninth Circuit authority, attorney-client privilege embraces attorney time, records and statements to the extent that they reveal litigation strategy and the nature of the services provided." (int. quot. marks omitted)).[1] As such, rather than submitting supporting documentation in piecemeal fashion – *i.e.*, with certain, incomplete information presented in support of the Motion and other privileged information held back to be submitted under seal or *in camera* at a later time – Defendants requested leave to submit all required documentation under seal or otherwise for *in camera* review if the Court finds that Defendants are entitled to fees. *See, e.g.*, *Fed. Sav. & Loan Ins. Corp. v. Ferm*, 909

[1] *See also Adtrader, Inc. v. Google LLC*, 2020 WL 6389186, at *2 (N.D. Cal. Feb. 24, 2020) (finding good cause to seal portions of documents containing detailed descriptions of the work performed by plaintiffs' attorneys because such descriptions revealed the nature of services provided to plaintiffs); *Real v. Cont'l Grp., Inc.*, 116 F.R.D. 211, 213 (N.D. Cal. 1986) (finding defense counsel's statement of fees and billing printouts were not discoverable by employee as such documents would necessarily reveal nature of legal services provided).

- 3 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

F.2d 372, 374-75 (9th Cir. 1990) (noting that *in camera* review of attorney invoices was necessary to protect "the confidentiality of Ferm's communications with her counsel and her counsel's mental impressions concerning litigation strategy"). Tellingly, Plaintiff does not even address (much less attempt to distinguish) the authorities cited by Defendants in their opening papers that hold that the information Defendants are required to submit in support of their Motion implicates the attorney-client privilege, nor does she dispute that the attorney-client privilege is in fact implicated here. Plaintiff's unsupported argument that the Motion is "procedurally defective" cannot supplant Defendants' indisputably valid concerns regarding the attorney-client privilege.

To that point, Plaintiff does not contend that Defendants' request to file their supporting documentation under seal or to submit that documentation for *in camera* review should be denied on the merits, nor does she cite to *any* authority in support her position that such a request was improperly included in Defendants' opening papers. Instead, she argues that Defendants cannot *now* submit supporting documentation because they had 14 days after judgment was entered within which to file their Motion. *See* Opp. at 5:1-12. But Defendants *did* file their Motion within 14 days after judgment was entered, and, notwithstanding, the Court can set a *different* deadline for filing a request for attorney's fees than that set forth in Rule 54 and/or L.R. 54-7—or, as relevant here, a *different* deadline for submitting documentation in support of such a request. *See* Fed. R. Civ. P. 54(d)(2)(B)(i) ("*Unless a statute or a court order provides otherwise*, the motion [for attorneys' fees] must be filed no later than 14 days after the entry of judgment …") (emph. added)); *see also Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 825 (9th Cir.1996) ("[A] court can by order provide a different deadline [under Rule 54].").

In short, Defendants' Motion is *not* procedurally defective, and Plaintiff's arguments to the contrary are entirely unsupported. As such, the Court should consider the Motion on the merits and, if the Court finds that Defendants are entitled



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to an award of attorneys' fees, grant them leave to file supplemental documentation to support the reasonableness of its fee request under seal or otherwise for *in camera* inspection.

## III. PLAINTIFF'S DISABILITY AND MEDICAL CONDITION DISCRIMINATION CLAIMS WERE OBJECTIVELY FRIVOLOUS

### A. Plaintiff's Own Testimony Belied The Notion That Any Relevant Decisionmakers Knew She Had Lupus

Plaintiff attempts to impute knowledge to Defendants vis-à-vis her alleged disclosure of lupus to her former supervisor, Joanne Moore.[2] Specifically, she claims that she disclosed her lupus to Ms. Moore in 2019 and that in California, "[a] supervisor's knowledge of an employee's disability is imputed to the employer because '[a] supervisor is the employer's agent or [sic] purposes of vicarious liability for unlawful discrimination.'" Opp. at 11:17-19 (citing *Alejandro v. ST Micro Elecs., Inc.*, 129 F.Supp.3d 898, 909 (N.D. Cal. 2015) (*quoting Cal. Fair Emp't & Housing Comm'n v. Gemini Aluminum Corp.* 122 Cal.App.4th 1004, 1015 (2004)). However, in *Alejandro*, *supra*, the employee was terminated for his absence even though his then supervisor knew that the reason the employee missed work was because of his disability. In contrast, here, Plaintiff's claims are belied by *her own deposition testimony*, whereby she testified that **Moore had nothing to do with this case.** Dkt. #44-4 at 17:10-12. Nothing in *Alejandro* could have suggested to Plaintiff that Moore's knowledge of her lupus should be imputed to the individuals who reported the compliance concerns or decisionmakers responsible for her termination.

[2] This is yet another example of Plaintiff's constantly evolving story. In her Complaint, Plaintiff alleged that she "first disclosed" her lupus "in or about 2020" "[d]uring the COVID-19 pandemic" because she "believed that Defendants might be able to assist in securing hydroxychloroquine for her own personal use" during a time when it "was also sought by many as a treatment for COVID 19." Compl., ¶ 13. But in her MSJ Opposition, Plaintiff claimed that she disclosed her lupus diagnosis in 2019 to her then-supervisor, Joanne Moore, so that she could obtain upgraded air travel. Plt. Stmt. of Genuine Disputes [Dkt. #50-1] at Nos. 152-154. Importantly, all of these facts were known to Plaintiff at the outset of this litigation.

- 5 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff further alleges that she disclosed her lupus to a member of Defendants' Occupational Health Services Department. Opp. at 9:23-25. Again, there were no facts to even suggest that this individual had anything to do with the investigations into Plaintiff or the decision to terminate her employment. Plaintiff knew of this evidentiary gap, testifying at her deposition that she had no facts at all to suggest that any decisionmaker involved in her termination was aware of her lupus diagnosis. Dkt. #44-4 at 40:3-6.

Plaintiff tries to excuse the fact that she filed this lawsuit without any facts to indicate that she was terminated for discriminatory reasons by claiming she had a "good faith basis" to believe that those involved in the termination knew she had lupus because Defendants' investigator, Susan Pierre, testified that she would have reviewed reports of earlier investigations involving Plaintiff as part of her regular practice and Plaintiff's 2019 disclosure of lupus had been documented in a prior investigation. Significantly, however, Ms. Pierre squarely denied under oath at her deposition having any knowledge that Plaintiff had lupus at any time during her employment. Def. Resp. to Stmt. of Genuine Disputes [Dkt. #53-3] at Nos. 121, 124; Pierre Depo. [Dkt. #44-7] at 40:13-18. There is no evidence to undermine Ms. Pierre's credibility on this point. This is yet another example of Plaintiff basing her claims solely on her own rank speculation – a hallmark of a frivolous action justifying an award of attorney's fees. *See, e.g., Lenk v. Monolithic Power Sys., Inc.*, 2022 WL 824233, at *4 (N.D. Cal. Mar. 18, 2022), *appeal dismissed*, 2022 WL 19829862 (9th Cir. Nov. 17, 2022) (awarding attorney's fees to defendant on the grounds that the claims were frivolous because the allegations did not rise above "bare speculation."). Even if Plaintiff thought her claims had evidentiary support when she initiated this lawsuit, she should have known after her deposition, and certainly after Ms. Pierre's deposition, that there was no evidence any relevant decisionmaker knew she had lupus.

As another example of bad faith, Plaintiff blatantly mischaracterizes the court's findings in *Morgan v. Regents of University of California,* 88 Cal.App.4th 52, 73 (2000). Contrary to Plaintiff's misrepresentation, *Morgan* does not stand for the supposed proposition that "evidence of decisionmaker's 'practice of reviewing applicants' personnel files' might have established defendant employer's knowledge of plaintiff's prior complaints to support claims for retaliation." Opp. at 11:11013. There, the plaintiff attempted to establish a causal link by offering his deposition testimony that he thought it would be the practice for the decisionmakers to review his personnel file in which there was a reference to a past grievance. *Morgan*, 88 Cal.App.4th at 73. The court noted that this testimony did *not* demonstrate that the specific individuals who interviewed plaintiff in fact reviewed his file, and further found that the plaintiff had presented no evidence to directly refute the decisionmakers' declarations disclaiming knowledge of plaintiff's prior grievance. *Id.* The court held: "In the absence of evidence that the individuals who denied appellant employment were aware of his past filing of a grievance, the causal link necessary for a claim of retaliation can not [sic] be established." *Id.* at 73. In other words, this case does not suggest that knowledge may be imputed to a decisionmaker in circumstances such as those present in the instance case, as Plaintiff would like this Court to believe. Contrary to Plaintiff's representations in her Opposition, the court in *Morgan* did not suggest that a causal link of knowledge on the part of the decisionmakers could be established based on a supposed practice of reviewing a file where the decisionmakers expressly disclaimed any knowledge of a prior grievance referenced in the file. Therefore, it is improper for Plaintiff to misrepresent *Morgan* as holding that "evidence of custom or practice would be sufficient to establish an employer-defendant's knowledge … regardless of Pierre's deposition testimony that she did not recall having reviewed such reports[.]" Opp. at 11:8-9.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 7 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

### B. PLAINTIFF LACKED ANY EVIDENCE OF PRETEXT

Plaintiff contends she had reasonable grounds to believe the numerous compliance violations uncovered by Defendants were merely pretext for discrimination because Defendants' investigation intake forms indicated that the matters for which she was investigated were not significant or involved low risk. *See* Opp. at 12:3-1310. But it was unnecessary for the Court to even reach this issue because Plaintiff had no evidence to establish her *prima facie* case in the first instance. Nevertheless, Plaintiff's argument in this regard is unsound. She does not dispute that she committed the compliance violations for which she was terminated. Instead, she argues that the resulting impacts of her compliance violations were not sufficiently severe to justify her termination. Thus, the crux of Plaintiff's argument is that she disagreed with Defendants' business decision to terminate her employment. *This is not evidence of pretext*. It is well settled that an employer's business decision cannot establish pretext even if it was wrong or mistaken unless there is evidence that it was for a discriminatory reason. *See* MSJ [Dkt. #44] at 14:2-25 (citing cases). But Plaintiff failed to proffer *any* evidence to suggest that her termination was discriminatory – *e.g.*, that other similarly situated individuals with a similar history of compliance violations were treated differently because they were not disabled.

### C. PLAINTIFF MADE MATERIALLY FALSE ALLEGATIONS IN HER COMPLAINT

In her Opposition, Plaintiff remarkably attempts to disclaim any knowledge of the Conga requirement at the time she filed her Complaint. But the record evidence and her deposition testimony directly contradict this. Defendants' Undisputed Fact No. 80 in support of the MSJ stated, "Plaintiff acknowledged her awareness of the Conga requirement during the investigation." In response, Plaintiff stated "Undisputed." Dkt. #53-3 at No. 80. During her deposition, Plaintiff testified that she had heard about Conga and that she was copied on emails specifically stating

- 8 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

that she was the project owner for the contract that needed to go through Conga, and that she knew the contract needed to go through Conga. Dkt. No. 44-4 at 147:19-148:6. Plainly, Plaintiff did know about the Conga requirement at the time she filed the lawsuit, contrary to her claim that she was "genuinely unaware" of Defendants' implementation of Conga when the Complaint was prepared. See Opp. at 14:19-22.

Plaintiff next tries to re-frame the misrepresentations in the Complaint. As noted in Defendants' opening brief, Plaintiff alleged in her Complaint that her termination "occurred notwithstanding Defendants' failure to provide any prior warning to [Plaintiff], corrective action plan, or other lesser disciplinary measures." Compl. at ¶ 17. These allegations were demonstrably false, as there had been multiple prior investigations into Plaintiff's compliance infractions and resulting warnings of which Plaintiff was well aware because she was interviewed in connection with each such investigation. Plaintiff now attempts to re-write her Complaint by claiming that "nothing in the record indicates that defendants ever cautioned her that *she might be terminated* prior to her actual termination in April 2022." Opp. at pp. 14-15 (emph. added). Plaintiff's after-the-fact attempt to narrow the claims she made in her Complaint is unavailing and further demonstrates her improper conduct in this case.

### D. PLAINTIFF'S PROFFERED DECISIONAL AUTHORITIES AND DECLARATION OF STEPHEN LARSON SHOULD BE DISREGARDED

None of Plaintiff's cited cases demonstrate that her claims were objectively reasonable. In *Cummings v. Benco Building Services*, 11 Cal.App.4th 1383 (1992), the employee had "presented some evidence of age discrimination." *Id.* at 1388-89. For example, the plaintiff presented evidence that the company's president told her during her exit interview that "she was too old and they were retiring her." *Id.* at 1385, 1388. She also presented the president's testimony that plaintiff's building supervisor position required varying degrees of exercise, no building supervisor was over the age of 60 and that there was doubt that the plaintiff would be able to walk

the distance necessary to supervise the building. *Id.* at 1389-90. While this evidence was not substantial enough to defeat summary judgment, it nevertheless constituted *some* evidence that could provide a reasonable basis to assert a claim for age discrimination. In contrast, here, Plaintiff presented *no evidence* of discrimination.

Nor is *White v. South Park Independent Sch. Dist.*, 693 F.2d 1163 (5th Cir. 1982) of any avail to Plaintiff because that case is patently distinguishable. There, the plaintiff's employment was terminated based on an abrasive incident involving his superior and his alleged threats to kill his superior. Prior to his termination, the plaintiff had made complaints about the athletic department and was demoted after he challenged his superior's evaluation of him. In denying an award of attorneys' fees, the Court of Appeals noted that the plaintiff had allegedly threatened to kill his superior during a meeting which all parties agreed was taped by the plaintiff but the recording did not actually contain any death threats. *Id.* at 1170. With this contradictory evidence in the record, the court could not find that the plaintiff's claims were frivolous. In contrast, here, Plaintiff has presented no evidence to suggest that Defendants' articulated legitimate reasons for her termination were not credible. Moreover, unlike in *White*, Plaintiff's termination did not result from a single, non-performance related incident. Rather, Plaintiff's termination followed a series of investigations into her numerous compliance violations that she committed during the discharge of her job duties and responsibilities.

Finally, as set forth in the concurrently filed Evidentiary Objections to Declaration of Stephen Larson, Judge Larson's declaration contains inadmissible and speculative opinion testimony that is irrelevant, immaterial, lacks in foundation, and should be disregarded by the Court. There are no facts or evidence to establish the nature and extent of Judge Larson's knowledge of the facts and evidence in this action, the process of his evaluation of the claims and evidence, or any other foundational facts to substantiate Judge Larson's conclusion that Plaintiff and her

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR AWARD OF REASONABLE ATTORNEY'S FEES AND LEAVE TO FILE SUPPLEMENTAL DOCUMENTATION IN SUPPORT THEREOF UNDER SEAL OR FOR *IN CAMERA* INSPECTION

attorneys had reasonable grounds to believe her claims had merit. Therefore, Judge Larson's declaration should be disregarded in whole.

## IV. PLAINTIFF'S SEX DISCRIMINATION CLAIM WAS OBJECTIVELY FRIVOLOUS

Plaintiff's sex discrimination claim fared even worse than her disability/medical condition discrimination claim. Plaintiff argued that she was treated differently than male employees because they were not made the subject of Ms. Pierre's investigations. Again, this is demonstrably false. As the Court noted in its Order granting the MSJ, "Pierre's report notes speaking to multiple employees, including male employees, alleged to be involved in Plaintiff's reported compliance violation." Dkt. 59. at p. 3222. Moreover, as this Court correctly found, Plaintiff failed to provide *any* evidence to establish "similarly situated male [employees] were treated more favorably than she was." *Id.* (quoting *Nicholson v. Hyannis Air. Serv., Inc.*, 580 F.3d 1116, 1125 (9th Cir. 2009)). This finding was not based on a lack of sufficient, substantial evidence; rather, it was based on a finding of *no* evidence.

Plaintiff's contention that she was never specifically asked in deposition about Defendants' managers calling her gender-equity initiatives "dumb" again misrepresents her own deposition testimony. *See* Opp. at 20:22-28. When asked whether anyone ever made any discriminatory comments towards her, Plaintiff made no mention of any disparaging comments concerning her gender-equity initiatives. Dkt. #44-4 at 40:11-43:9. Instead, Plaintiff testified during her deposition that when she returned from maternity leave in 2005, she was told she was ineligible to receive a top rating because she was on leave. *Id.* at 40:11-41:25. Plaintiff was later asked, "What facts do you have to show that you were discriminated on the basis of your age or sex at Defendants?" In response, Plaintiff replied that when she was on maternity leave over a decade prior, she was subject to discrimination because she had a child. Plaintiff was then asked, "Okay. Full answer?", to which she responded: "Yes." *Id.* at 52:4-15. Thus, in direct contravention of her Complaint allegations,

BAKER & HOSTETLER LLP ATTORNEYS AT LAW LOS ANGELES

Plaintiff's exhaustive deposition testimony foreclosed any notion that other unidentified managers disparaged her gender-equity initiatives and instead grounded her sex discrimination claim upon a single isolated and time-barred incident that allegedly occurred more than 15 years before she filed this action. Plaintiff and her attorneys should have known at this point, if not at the outset, that her sex discrimination claim was completely groundless.

## V. PLAINTIFF'S AGE DISCRIMINATION CLAIM WAS OBJECTIVELY FRIVOLOUS

There was no rational basis in law or fact to support Plaintiff's pursuit of her age discrimination claim. It is not unlawful to take an adverse employment action against someone who is in a protected age class. Such action only becomes unlawful if it is taken *because* the employee is in a protected age class. Yet, the only evidentiary basis for Plaintiff's age discrimination claim was the unremarkable fact that she was a member of a protected age class at the time of her termination. Indeed, the *only* allegation in Plaintiff's Complaint in support of her claim for age discrimination is that "she was greater than 40 years of age." Compl., ¶ 46. Nowhere in her Complaint did Plaintiff allege any facts to suggest that her termination was in any way motivated by her age.

Nor could Plaintiff have reasonably believed that discovery would subsequently reveal facts to support her claim. Plaintiff was 51 years of age in August 2023. Dkt. #44-4 at 54:4-5. *See also* Plt.'s Stmt. of Disputes [Dkt. #53-3] at No. 139; Yessaian Decl., [Dkt. #51-9], ¶ 2. Plaintiff would have thus entered FEHA's "40 and over" protected class in approximately 2012. Between 2001 and 2020, Plaintiff contends she "receiv[ed] a series of promotions up to her title as Associate Director – West Regional Marketing – US Hematology," "received numerous awards for her work in the sales and marketing of Novartis's products, and consistently received performance reviews from her superiors indicating that her work met or exceeded the Defendants' expectations." *See* MSJ Opp. [Dkt. #50] at

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

3:15-22. She contends that her managers consistently gave her high performance ratings and positive feedback about her work performance. *Id.* at 3:22-4:4. Plaintiff also contends that "[f]rom 1997 up to and through 2019, [she] was never made the subject of any investigation or disciplinary measure by Novartis." *Id.* at 4:4-5. Thus, for ***seven years*** after Plaintiff's entrée into a protected class, Defendants allegedly lauded her performance and rewarded her with promotions. Only after her numerous compliance violations were reported and subsequently substantiated was her employment terminated – *seven years* after Plaintiff turned 40. It is wholly illogical to think that Defendants treated Plaintiff so well between the ages of 40 to approximately 47 only to later terminate her employment because she was over the age of 40. Even if Plaintiff genuinely believed that her termination was unjustified, and even assuming the truth of her Complaint's factual allegations, no objectively reasonable person in her shoes could have inferred, in good faith, that she had a colorable claim for age discrimination.

Plaintiff's own deposition testimony confirmed she lacked evidence of age discrimination. Plaintiff was asked, "You can't identify anyone who had animosity against you at Defendants because of your age; correct?" In response, Plaintiff stated, "I cannot answer that. I do not know." Dkt. #44-4 at 53:25-54:3.

Plaintiff's MSJ Opposition further belies any notion that she had a good faith basis for claiming age discrimination. The ***only*** "evidence" Plaintiff proffered in support of her age discrimination claim was a notation Ms. Pierre made in her February 2021 report that Plaintiff had been with Novartis for 24 years and Plaintiff's belief that three of four individuals who were disciplined as a result of Ms. Pierre's 2022 report were over 40 years of age. MSJ Opp. [Dkt. #50] at Section VI. Such evidence *might conceivably* support a reasonable inference of discrimination *if* it was coupled with other evidence that Ms. Pierre herself was under the age of 40 and/or had made comments or otherwise exhibited conduct that was indicative of an age-based bias, or that the three over 40 individuals who were

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

disciplined were unfairly targeted, or there were other similarly situated individuals under the age of 40 who committed the same or similar infractions but were spared any discipline. But, *no* such evidence exists.

Even in her Opposition to the instant Motion, Plaintiff fails to point to any record evidence remotely suggesting that her termination was motivated by her age. Instead, she continues to argue only that she had reasonable grounds to believe Ms. Pierre knew her age. But even this were true, it brings her no closer to linking her age to her termination.

This is unlike the cases Plaintiff cites where employees managed to present *some* evidence of discrimination that ultimately fell short of creating a triable issue of fact sufficient to defeat summary judgment. Plaintiff did not simply misjudge the weight of her evidence. Here, there was *no evidence at all* which could reasonably lead Plaintiff or her attorneys to believe she was targeted on the basis of her age. Yet, they insisted on pushing her frivolous claims through summary judgment and forcing Defendants to defend against them. Defendants should be entitled to an award of reasonable attorneys' fees.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## VI. PLAINTIFF'S REJECTION OF DEFENDANTS' NOMINAL RULE 68 OFFER OF JUDGMENT SUPPORTS AN AWARD OF ATTORNEYS' FEES

Plaintiff argues – without citing any authority in support – that Defendants' Offer of Judgment and mere discussions regarding a potential settlement belie their current position that Plaintiff's claims had no merit or were frivolous. Plaintiff is wrong. As noted in Defendants' Motion, California courts have held just the opposite, finding that a plaintiff's unreasonable repudiation of settlement offers to compel a defendant to proceed to summary judgment actually weighs in favor of an award of attorney's fees to a defendant who is granted summary judgment. *See Lial v. Cnty. Of Stanislaus*, 2011 WL 92012, *7 (E.D. Cal. Jan. 11, 2011) (awarding attorney's fees to a prevailing defendant after the plaintiff "unreasonably repudiated legitimate settlement offers and made outrageous counteroffers to compel

defendants to proceed to summary judgment….”); *Portnoy v. Veolia Transp. Servs.*, 2013 WL 4828122, *2 (E.D. Cal. Sept. 5, 2013) (holding that the defendant's offer to settle and plaintiff's rejection thereof demonstrated that the plaintiff's action was frivolous). Indeed, courts have held that attorney's fees are, in fact, "*especially warranted* if [the plaintiff] rejected a nominal settlement offer and instead continued to litigate frivolous claims." *Hamilton v. Sheridan Healthcare., Inc.*, 2015 WL 13541033, *7 (S.D. Fla. March 4, 2015) (emph. added). In the instant case, Defendants' $75,000 offer of judgment,[3] which was *inclusive* of Plaintiffs' attorneys' fees and costs, was nominal against the backdrop of Plaintiff's purported $1,200,000 damages valuation, which was *exclusive* of attorneys' fees and costs, and Defendants' prospective expenditure of a substantial amount in attorney's fees to defend this action through the MSJ phase. *Id.* It was a reasonable effort by Defendants to provide Plaintiff with an opportunity to reconsider her pursuit of baseless claims and put an end to this frivolous litigation. Plaintiff's rejection of Defendants' offer and outrageous counterdemand forced Defendants to draft and file a MSJ on a matter which should have settled.

Plaintiff contends her counterdemand was reasonable when viewed against her expert witnesses' $1,200,000 damages valuation, but that valuation is irrelevant to the fact that her claims lacked an objective basis in fact and law. Her expert's damages valuation was based on the faulty premise that her claims were meritorious. Because it did not account for the evidentiary gaps and weaknesses in Plaintiff's claims, it is not an appropriate comparator for Plaintiff's counterdemand. Under these circumstances, Plaintiff's unreasonable counterdemand supports an award of attorney's fees. *Id.* (holding that defendant's $50,000 settlement offer was nominal

---

[3] Oddly, Plaintiff argues, on the one hand, that Defendants' $75,000 offer was neither trivial nor nominal; yet, she simultaneously argues, on the other hand, that her counteroffer of more than seven times that amount at $575,000 was also eminently reasonable. It is difficult to imagine that a person who views $575,000 as a reasonable settlement offer would view a $75,000 offer as being anything more than nominal.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

when viewed in the proper context, and as such, plaintiff's rejection of the offer weighed in favor of an award of attorney's fees to defendant).

## VII. CONCLUSION

Based on all of the foregoing, Defendants respectfully submit that their Motion for Attorneys' Fees be granted with leave to file documents related to the reasonableness of fees, separately under seal or otherwise for *in camera* inspection.

Dated: May 30, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Sylvia J. Kim*
M. Scott McIntyre
Sylvia J. Kim
Amy E. Beverlin

Attorneys for Defendants NOVARTIS PHARMACEUTICALS CORPORATION and ADVANCED ACCELERATOR APPLICATIONS USA, INC.

## CERTIFICATION

The undersigned, counsel of record for Defendants, hereby certifies that this brief contains 5,103 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Sylvia J. Kim*
SYLVIA J. KIM